HOUSING, INC.; MERHA, LTD.; AND CARL W. JOHNSON, PLAINTIFFS v. H. MICHAEL WEAVER; W. H. WEAVER CONSTRUCTION COMPANY; AND ALVIN R. BUTLER, TRUSTEE, DEFENDANTS AND LANDIN, LTD., ADDITIONAL DEFENDANT

No. 8018SC1096

(Filed 7 July 1981)

1. Contracts § 19— novation

It was apparent from the parties' 27 April 1972 agreement and the acts of the parties that such agreement rescinded the parties' 21 April 1971 agreement and constituted a settlement between the parties for claims involving construction of federally subsidized rental units.

2. Trial § 48— damages—jury verdict properly set aside

The trial judge did not err in setting aside the verdict of the jury on the issue of damages and substituting his findings in lieu thereof upon which he entered judgment, since the stipulations of the parties, the undisputed evidence, and plaintiff's admissions established the amount of defendant's damages as a matter of law, and it is within the power of courts to decide issues of damages where these issues are undisputed.

APPEAL by plaintiffs from *Jolly, Judge.* Judgment entered 19 June 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 6 May 1981.

This is an action involving two experienced real estate developers engaged in the construction of federally subsidized rental units across eastern North Carolina. The action has been heard previously on appeal in this Court at which time this Court reversed summary judgment for defendant. *Housing, Inc. v. Weaver*, 37 N.C. App. 284, 246 S.E. 2d 219 (1978). The Supreme Court, on appeal, affirmed and adopted the decision of the Court of Appeals. *Housing, Inc. v. Weaver*, 296 N.C. 581, 251 S.E. 2d 457 (1979). Thereafter, the trial court granted plaintiff's motion to sever trial of a cross action against Landin, Ltd., the third party defendant, and incorporated its ruling in a pre-trial order entered 27 November 1979.

Judge Morris (now Chief Judge), in the original appeal of the case to this Court, has provided an excellent summary of the facts. We set forth portions of that opinion below, along with amendments, which reflect facts brought forth at trial.

> The plaintiffs filed suit 31 December 1973, alleging, *inter alia*, that an agreement dated 27 April 1972 (hereinafter referred to as the 27 April 1972 agreement)—one of two contracts underlying this suit—was procured by economic duress. They seek restitution plus consequential damages. They pray that a note for $122,500 given as part of the consideration for the 27 April 1972 agreement be declared null, void, and of no legal effect and that the deed of trust securing it be cancelled and that they recover of H. Michael Weaver and Weaver Construction Company the sum of $63,333 (the amount already paid to defendant's in excess of defendants' actual expenses of $58,421). Plaintiffs further seek $500,000 in consequential damages due to a loss in cash flow. Plaintiffs either alternatively or in addition to the "inducement by economic duress" claim allege a breach of the initial 21 April 1971 agreement.

> Defendants answered denying any wrongful acts in inducing the 27 April 1972 agreement and denying any breach of the 21 April 1971 agreement. Defendants counterclaimed seeking recovery of $122,500 on the note which was given as part of the consideration for the 27 April 1972 agreement and $76,667 (principal and interest) on the balance of the 27 April 1972 agreement. Defendants' further counterclaim for

$150,000 damages for alleged abuse of process was dismissed, but that dismissal is not before this Court. Defendants also impleaded Landin, Inc., whom they allege to be the alter ego of plaintiffs.

Plaintiffs are a developer, and two corporations owned by him. Since there is an identity of interests, they will be hereafter referred to as plaintiff. Defendants are a developer, the corporation owned by him and his family, and the trustee of the deed of trust. Since the interests of these persons are identical, they will be referred to collectively as the defendant. The third-party defendant is a corporation owned by plaintiff Carl W. Johnson, and it is the present owner of the properties involved.

Prior to 21 April 1971 plaintiff had received a commitment from HUD to subsidize and guarantee the rental of low income housing projects in eastern North Carolina. The project, known as 'Mid-East', involved construction in five counties on 11 different tracts of land. Plaintiff needed to associate with another developer to provide 'bonding capacity' (the ability to acquire a payment and performance bond) and capital for prefinancing expenses. After negotiations, plaintiff and defendant executed 'a memoranda of understanding' 21 April 1971. The memorandum was in the form of a letter from defendant to plaintiff. It provided *inter alia* that:

(1) The parties intended to form a joint venture of some type.

(2) Defendant would provide capital until construction financing was obtained.

(3) Defendant would advance to plaintiff $50,000.

(4) Defendant would build the project and receive cost plus 4% prior to division of profits.

(5) 'Profits' were defined to mean the difference in all development costs and the amount that could be borrowed on the completed project.

(6) 'Profits' were to go 70% to plaintiff 30% to defendant.

(7) Losses were to be borne 50-50.

(8) Completed projects were to be owned 50-50 and, possibly, the properties could be divided with each party owning 100% of ½ of the total properties.

(9) Withdrawal prior to 15 May 1971 would leave each party to bear his own expenses except that plaintiff would reimburse defendant for land purchases.

(10) If there were a loss, plaintiff would repay the $50,000 advance to defendant.

In setting up the project, plaintiff had previously acquired options on certain lands (more than 20 tracts). The time approached for the expiration of these options. In June 1971, it became necessary to exercise certain of these options. Rather than have the property conveyed to plaintiff or to a Johnson-Weaver joint venture and then give a deed of trust for the purchase price to defendant (who was to furnish the money), the parties agreed that H. Michael Weaver (a named defendant) would take title in his individual name. Both parties agree that the reason was to simplify the transaction. Defendant also suggests the desire to avoid certain negative tax consequences.

During September and October of 1971 the relationship became less amicable. A dispute arose over construction costs. Plaintiff's evidence suggests the following:

(1) Defendant refused to co-operate on obtaining one financing package to provide a $4,250,000 loan (eventually a $3,920,000 loan was secured).

(2) Defendant would not pay the loan commitment fee on the loan eventually received.

(3) Defendant would not give a maximum on construction costs under the 21 April 1971 agreement except for a $3,920,000 maximum which would cut plaintiff out of all the 'profits'.

(4) Other companies offered to build the project for $3,300,000 or less.

(5) Defendant was attempting to drain all the profits off for itself by way of the construction process.

(6) Defendant became unreasonable and threatened to destroy the project through its record ownership of crucial lands.

(7) Defendant breached certain other duties.

(8) Defendant used its ownership of the lands to force plaintiff to enter another agreement.

Defendant vehemently disagrees and offers evidence tending to show the following:

(1) Plaintiff wanted all the profit once it became apparent that it would be profitable.

(2) Defendant did not breach any duties.

(3) Plaintiff has colored certain instances in which defendant acted reasonably to look like a breach.

(4) Defendant was not obligated to give a maximum price.

(5) $3,920,000 was a reasonable maximum since it really involved only $3,480,000 for construction.

(6) Plaintiff, as well as defendant, rejected the $4,250,000 loan offer for other reasons.

(7) Defendant was always entitled to ½ of the lands and did not hold the lands for anyone else's benefit.

(8) Defendant owned ½ of the whole project and sold it under the compulsion of plaintiff.

The parties continued negotiations. It became apparent to both parties that they could not work together. Plaintiff wanted to get the land back. Defendant demanded $225,000 plus expenses. Plaintiff offered $170,000 plus expenses. Some evidence indicates that defendant offered to buy plaintiff out for $225,000. On 23 December 1971, Johnson and Weaver executed an agreement under which Weaver could receive $200,000 plus expenses to return the land to Johnson if Johnson was able to meet certain conditions. Johnson was unable to do so, and the agreement expired. By agreement of 27 April 1972, plaintiff bought out defendant for $212,500 plus expenses (total $270,921.94). Payment was made as follows:

(1) Reimbursement of expenses was due at the closing of the construction loan.

(2) $20,000 paid by assignment to the defendant of an obligation of the defendant held by plaintiff.

(3) $70,000 paid by a non-negotiable note, secured by a deed of trust on ½ the property, due upon closing of permanent financing.

(4) $122,500 paid by a non-negotiable note, secured by a deed of trust on the other ½ of the property, due upon closing of permanent financing.

(5) Interest began on the later of 1 June 1972 or the commencement of construction.

(6) If the permanent loan did not exceed the development costs, plaintiff was only obligated to pay at the rate of $3,000 per month.

Payments were made as follows:

| | | |
|---|---|---|
| (1) $20,000.00 | July 14, 1972 |
| (2) $18,421.94 | September 12, 1972 |
| (3) $70,000.00 | October 3, 1972 |
| (4) $13,333.00 | October 3, 1972 |

Total paid $121,954.94

Plaintiff's evidence suggests that the housing authority and HUD at all times from October 1971 until April 1972, were urging him to begin construction. Johnson testified that the housing authority and HUD threatened to withdraw their commitment and award the project to another developer. He further testified that the press of time and the danger of losing the project forced him into compliance. Further evidence suggests that the fear that defendant would foreclose on the two deeds of trust forced him to continue payments.

Plaintiff proceeded on his own after 27 April 1972. In June 1972, he sold ½ interest in the project for $250,000 to Merha, Limited, a limited partnership of which Housing, Inc., was the general partner. The savings and loan which furnished construction financing foreclosed during the fall of 1973. Landin, Ltd., a corporation wholly owned by Carl W. Johnson, purchased the project at the foreclosure sale. The

process was completed in November or December of 1973. Landin still ownes the property. After foreclosure, plaintiff ceased payments on the obligations to defendant and filed suit 31 December 1973 seeking a return of the monies paid and nullification of the notes not yet paid.

Defendant moved for a directed verdict following the close of plaintiff's evidence. The court reserved ruling until the close of all the evidence. Thereafter, at the close of all the evidence, plaintiff moved for a directed verdict as to their claim for restitution and as to defendant's counterclaim, conceding the breach of contract claim should go to the jury. Defendant renewed its motions for a directed verdict on all issues. The trial judge denied all motions, subject to reconsideration upon motions following the verdict. Both parties submitted proposed jury issues and instructions. On the following day, the court announced its decision that the letter dated 21 April 1971 was not a contract and declined to submit breach of contract issues to the jury. The court further ruled that it would submit plaintiff's case to the jury solely for restitution of monies paid.

The court instructed the jury on the issue of restitution that if it believed all of the evidence and found for plaintiff, it should award plaintiff $63,533.00 as restitution ($121,954.94 less $58,421.94, which were Weaver's actual itemized costs and expenses). On the other hand, the court told the jury that if it believed all the evidence on defendant's counterclaim and found for defendant, it should find that defendant was entitled to $149,167 ($122,500 plus $26,667 advanced expenses). The court further instructed the jury "if you do not believe in answering either of these issues that the evidence is as it all tends to show, you should use such other figure as you deem appropriate under the evidence as it has been presented to you in this case."

The court tendered the following issues to the jury, which were answered by them as shown:

1. Prior to execution of the letter agreement dated April 27, 1972, was defendant H. Michael Weaver under a duty to convey to Housing, Inc., title to the lands acquired by him through the exercise of options owned by Housing, Inc.?

ANSWER: No

2. At the time of execution of the agreement dated April 27, 1972, and the promissory notes and assignment thereafter executed, were the plaintiffs Carl Johnson and Housing, Inc., acting under duress, coercion or business compulsion from defendant H. Michael Weaver, as alleged in the complaint?

ANSWER: No

3. If so, did plaintiffs Carl Johnson and Housing, Inc., ratify the April 27, 1972 agreement and the promissory notes and assignment thereafter executed, by their subsequent conduct?

ANSWER: _____

4. If you have found in favor of the plaintiffs as to the foregoing issues, what amount of restitution are plaintiffs entitled to recover from defendant H. Michael Weaver?

ANSWER: $ _____

5. If you have found in favor of the defendants as to the foregoing issues, what amount are the defendants entitled to recover of the plaintiffs?

ANSWER: $ ____ 0 _____

This the 12th day of December, 1979.

Thereafter, the trial judge entered judgment in accordance with the jury's action. Defendant filed a motion for judgment notwithstanding the verdict, for an amendment of the verdict and for a new trial. Plaintiff moved for judgment notwithstanding the verdict, or in the alternative, for a new trial.

A little over six months later the court entered the following amended judgment:

This cause coming on to be heard and being heard before the undersigned Judge upon defendants' motions for judgment notwithstanding the verdict on the fifth issue submitted to the jury, amendment of the judgment, judgment notwithstanding the verdict on all issues, and a partial new trial limited to the issue of defendants' damages (the fifth issue) and on plaintiffs' motion for judgment notwithstanding the verdict on all issues and a new trial on all issues;

And it appearing to the court:

1. Plaintiffs' motion for judgment notwithstanding the verdict on all issues should be denied;

2. Plaintiffs' motion for a new trial on all issues should be denied;

3. Defendants are entitled to an order granting their post-trial motions for judgment notwithstanding the verdict on the fifth issue, amendment of the judgment and judgment notwithstanding the verdict on all issues, any one of which supports an award to defendants on their counterclaim;

4. The jury verdict on the fifth issue and the judgment entered thereon should be set aside and judgment should be entered for defendants in the amount of $215,866.57 pursuant to their post-trial motions;

5. If this judgment awarding damages to the defendants is hereafter vacated or reversed on appeal, the jury's verdict on the fifth issue and the judgment entered thereon should be vacated and set aside and a partial new trial limited to the issue of defendants' damages (the fifth issue) should be granted to defendants;

6. The parties consented to arguing these motions out of session and out of county and to having this judgment signed out of session and out of county;

7. This judgment should constitute a final judgment as to all claims and all parties, except as to defendants' cross-claim against the additional defendant, Landin, Ltd., and that there is no just reason for delay in entering a final judgment as to the complaint and counterclaims.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED as follows:

1. Plaintiffs' motion for judgment notwithstanding the verdict on all issues is denied;

2. Plaintiffs' motion for a new trial on all issues is denied;

3. The verdict of the jury on the issue of defendants' damages (the fifth issue) and the portion of the judgment

(entered in this action on December 13, 1979) relating thereto that orders defendants shall 'recover nothing of plaintiff by reason of the matters and things alleged in their counterclaim' is hereby vacated and set aside.

4. Judgment is granted in favor of defendants against plaintiffs in the amount of $215,866.57, which includes the principal sum of $122,500.00, interest specified in the note at the rate of 8 1/8% from April 1, 1973 through December 12, 1979 in the amount of $66,699.57 and reimbursable expenses of $26,667.00;

5. If this judgment awarding damages to the defendants is hereinafter vacated or reversed on appeal, the court hereby determines in its discretion that defendants' motion for a partial new trial limited to the issue of defendants' damages (the fifth issue) should be granted for the following reasons:

a. Inadequate damages appear to have been given by the jury under the influence of passion and prejudice;

b. The fifth issue should not have been submitted to the jury for the reason that there was no question of fact concerning the amount of defendants' damages;

c. Having submitted the fifth issue to the jury the Court should have instructed the jury to return a judgment for the defendants in the amount herein awarded;

d. The jury's verdict as to the fifth issue was contrary to the greater weight of the evidence; and

e. The jury's verdict on the fifth issue was contrary to law.

6. The costs of this action shall be paid by the plaintiffs; and

7. There is no just reason for delay in entry of this final judgment as to the complaint and counterclaim as provided herein.

Plaintiff excepted and gave notice of appeal.

*Smith, Moore, Smith, Schell & Hunter, by Jack W. Floyd and Frank J. Sizemore III and E. Garrett Walker, for plaintiff appellants.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by James T. Williams Jr., Edward C. Winslow III and John H. Small, for defendant appellees.*

HILL, Judge.

We do not find it necessary to address the first issue raised by the appellant: Did the trial court err in failing and refusing to submit to the jury an issue as to defendant's breach of contractual obligation to plaintiff? Serious doubt exists that the letter dated 21 April 1971 was anything more than a letter of intent. There exists sufficient vagueness to make it void and unenforceable. If there was a valid and binding contract under which the parties worked for a period of time, then the contract of sale and purchase of the project as outlined in the 27 April 1972 agreement was effective as a novation of the 21 April 1971 agreement and any working agreement resulting therefrom.

[1] A novation precludes the assertion of any right under the original contract. *Fowler v. Insurance Co.*, 256 N.C. 555, 124 S.E. 2d 520 (1962); *Products Corporation v. Chestnutt*, 252 N.C. 269, 113 S.E. 2d 587 (1960).

Under the 1972 contract, the Johnson interests offered to purchase all of Weaver's right, title and interest in the Mid-East Regional Housing Project. The offer was accepted by the Weaver interests and consummated 14 July 1972 by the delivery of deed, notes and deed of trust, other necessary financing documents, and fulfillment of other obligations set out in the proposal. Johnson testified that the consideration of $212,500 over expenses was the result of negotiations between Weaver and himself. Payments were made beginning with the date of closing up to and including 3 October 1972. A total of $121,954.54 was paid. Suit was filed by plaintiff on 31 December 1973, one day before the due date on the notes. *Over the almost one and one-half years following the date of the offer, payments were made and no complaints expressed by Johnson to Weaver.*

The jury answered issues indicating that Weaver was under no duty to convey to Housing, Inc. title to the lands acquired by

him through the options owned by Housing, Inc. Likewise, the jury answered an issue determining that Carl Johnson and Housing, Inc., were not acting under duress, coercion, or business compulsion at the time of the execution of the agreement dated 27 April 1972. It is apparent from the agreement and the acts of the parties that the second agreement rescinded the prior agreement and constituted a settlement between the parties for claims involving the project. Plaintiff's first assignment of error is overruled.

Appellant next contends the trial judge erred in his instructions to the jury and that it is entitled to a new trial. We disagree. The reasoning set out in connection with the previous assignment of error applies equally here. Johnson argues the court erred in failing to charge on economic duress properly, citing the prior decision of this Court in this case. A careful reading of the charge as a whole reveals the trial judge instructed the jury to find for Johnson unless it determined that Weaver held title to the land in trust for the joint venture. Such an instruction would have included the question of duress. The jury verdict answered the issue. Weaver conveyed not only title to the real estate but all other interests to Johnson. The nature and quality of the title held by Weaver became moot as a result of conveyance. Plaintiff's second assignment of error is overruled.

[2]  Appellant next contends the trial judge erred in setting aside the verdict of the jury on the issue of damages and substituting his findings in lieu thereof upon which he entered judgment.

At the conclusion of the trial, the jury returned a verdict finding as a fact that (1) Weaver had no duty to convey to Housing, Inc., title to the lands acquired by him through the exercise of options owned by Housing, Inc.; and (2) that Housing, Inc., and Johnson were not acting under duress, coercion or business compulsion in executing the 27 April 1972 agreement and notes which were the basis of Weaver's counterclaim. The jury also found the Weaver interests were not entitled to recover *any* amounts from the Johnson interests under the 27 April 1972 agreement (which was the basis for the notes) or otherwise. The trial judge adopted the verdict and entered judgment to the effect that neither party was entitled to recover from the other.

Defendant moved to set aside the verdict with respect to the issue of its damages and moved for judgment n.o.v. as to all issues, including damages, or to amend the judgment to include damages. In the alternative, defendant moved for a new trial limited to the issue of defendant's damages or upon all the issues. Plaintiff also moved for judgment n.o.v. or alternatively for a new trial upon all issues. Thereafter, both parties submitted arguments to the trial judge, and some six months later, on 24 June 1980, the trial judge entered the order and judgment set forth in the facts above.

Approximately one month prior to the trial, plaintiff moved to sever for trial the issue of defendant's liability to plaintiff from those of damages and defendant's cross claim against Landin, Ltd. In stating its reason, plaintiff alleged:

If the Weaver defendants prevail on any of their defenses the damage issue will not be tried at all because *there is no dispute as to what amount is due and owing on the notes*, if they are valid. (Emphasis added.)

Likewise, in support of a motion *in limine* and motion to sever filed by plaintiff two weeks later, plaintiff stated:

There is no controversy with respect to the amount of damages Weaver would be entitled to recover upon the notes if Housing alone is, or Housing and Landin, are liable upon them. Therefore, the question of the amount of Weaver's damage is not an issue.

The trial court entered a final pretrial order in which it severed defendant's counterclaim against Landin for a subsequent trial. At that time both parties submitted proposed jury issues. Neither party included an issue for determining plaintiff's liability to defendant or for determining the amount of the defendant's damage.

Plaintiff admitted in its complaint that defendant was entitled to be reimbursed for working capital advances in the sum of $58,421.94. During the trial Johnson testified plaintiff still owed $26,667.00 on the working capital advances. At trial the unpaid promissory note for $122,500 was admitted into evidence. Johnson admitted he signed the note on behalf of Housing, Inc. and that he personally guaranteed the note. Both parties stipulated the due date as of 1 January 1974. On its face the interest rate was

established at 8 1/8%. Plaintiff first raises the issue of interest allowed on the unpaid note after the award. No assignment of error was taken to the award of interest, and it is deemed abandoned. App. R. 10(c). The amount of the award of damages made by the trial judge was not in dispute and was certain as to terms.

Under G.S. 1A-1, Rule 59(a), the courts of this State have the authority to set aside a verdict as to one issue and order a new trial as to it while leaving the verdict for the remaining issues intact. *Also see Hussey v. R.R.*, 183 N.C. 7, 110 S.E. 599 (1922).

If a verdict was returned, the judge may allow the judgment to stand or may set aside the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. G.S. 1A-1, Rule 50(b)(1).

The trial court had the power to grant a new trial as to the issue of damages alone, but such a trial would be a waste of judicial resources because the stipulations of the parties, the undisputed evidence, and the plaintiff's admissions establish the amount of defendant's damages as a matter of law. The trial court could have entered a directed verdict under the circumstances, or it could have waited for the jury verdict and thereafter stricken out the adverse answer to the issue and answered the issue itself. This the court elected to do. Our courts have long recognized the power of the courts to decide issues of damages where this area is undisputed. *Whitley v. Redden*, 276 N.C. 263, 171 S.E. 2d 894 (1970). This assignment of error is overruled.

We have examined the two remaining assignments of error brought forward by appellant. For the reasons set out above in reaching our decision, we find such assignments of error to be without merit in this case.

Affirmed.

Judges MARTIN (Robert M.) and CLARK concur.