SALLY CITRINI v. HAMPTON GOODWIN, AND GOODWIN REALTY, INC.

No. 8210SC1337

(Filed 15 May 1984)

**1. Contracts § 19— evidence of novation—issue for jury**

    In an action in which plaintiff sought to recover one-half of all commissions arising from the sale of property, the trial court erred in granting plaintiff's motion for directed verdict where defendant introduced evidence of the affirmative defense of novation which conflicted with plaintiff's oral testimony. Plaintiff offered testimony that an employment agreement with defendant had nothing to do with an earlier agreement concerning commissions from the sale of property, and defendant testified that he intended by the later agreement to change the earlier agreement in accordance with discussions which occurred when plaintiff started to work for him. He also introduced evidence that listings were renewed shortly after the second agreement and expert testimony that, under the customs of the real estate business, no commissions were due under such agreements after the listings expired or after negotiations were interrupted. Defendant also elicited testimony from plaintiff that she accepted a commission on one of the subject tracts at a rate set by the employment contract.

**2. Contracts § 17.2— error to direct verdict against defendant on affirmative defense of termination of original contract**

    In an action concerning real estate commissions, the trial court erred in directing a verdict against defendant on the affirmative defense of termination

---

Citrini v. Goodwin

---

of contract where the contract did not contain an expiration date, and where some 15 months after execution of the contract, defendant told plaintiff the contract was terminated, and there were no listings or options on the subject property at that time.

**3. Brokers and Factors § 6— right to commission—evidence that tract sold "tied in" with the sale of the other tract**

In an action concerning real estate commissions, the trial court erred in granting a directed verdict for defendant at the close of plaintiff's evidence on the issue of whether one of the tracts sold "tied in" with the sale of the others. Plaintiff introduced evidence that the tracts were listed together, that she had introduced defendant to the owner of the tract in question at which time defendant obtained the first listing, and that the property eventually sold to related buyers. This was more than a scintilla of evidence that the tract was "tied in," as the term was used in the contract between plaintiff and defendant, with the others.

**4. Rules of Civil Procedure § 50— waiver of right to assign error to denial of directed verdict motion**

Defendant waived the right to assign error to the denial of his motion for a directed verdict made at the close of plaintiff's evidence where, after presenting his own evidence, he did not renew his motion at the close of all the evidence. App. R. 10(b)(3).

APPEAL by both parties from *Brewer, Judge.* Judgment entered 30 July 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 28 November 1983.

*Sanford, Adams, McCullough & Beard, by Charles C. Meeker and Catherine B. Arrowood, for plaintiff Citrini.*

*Akins, Mann, Pike & Mercer, P.A., by J. Jerome Hartzell, and Harrell & Titus, by Richard C. Titus, for defendant Goodwin.*

BECTON, Judge.

This case presents various issues concerning contract law and directed verdicts in contract cases. Plaintiff Citrini operated a realty business in Durham, and, with an eye toward marketing their property, she made preliminary contact with the owners of contiguous portions of a large tract in a prime development area. Citrini directed her efforts to establishing a friendly relationship with the landowners, who were mostly elderly farm folk. Before she started trying to sell the property, however, Citrini decided to close down her business. She therefore introduced defendant Goodwin to the landowners in order to have them list their prop-

erty with Goodwin's agency, Goodwin Realty, Inc. (The parties have stipulated that Goodwin and Goodwin Realty are the same entity; they are hereafter referred to simply as Goodwin.)

On 25 April 1979, Citrini and Goodwin executed an agreement which provided that they would split the commissions from the sale of the subject property in half:

> This is to certify that Sally Porter Citrini, Realtor, and Hampton Goodwin with Goodwin Realty have a mutual agreement that if any of the property along Old Raleigh Road belonging to the A. J. Hall estate and all the Morris properties sells, they shall split the commission in half before any co-brokering commitments on the part of either party. This agreement shall also include any adjacent properties that tie in with the sale of the Hall or Morris properties. The commission checks shall be viewed by both parties before negotiating the checks. Mrs. Citrini shall give 15% of her commission to Realty Horizons/Consumer United Realty as per her employee contract with her firm.

Goodwin listed the subject properties for sale beginning in April, 1979. In early 1980, Citrini worked for Goodwin as a contract agent for several weeks. Before commencing employment she signed the following agreement.

> Agreement between Goodwin Realty, Inc. and Contract Employee
>
> Sally Citrini is associated with Goodwin Realty, Inc. as an independent Contract Agent, to conduct business from office of Goodwin Realty, Inc.
>
> The rate of pay to Sally Citrini is a percentage commission comprised of 40% Commission—Listings; 40% Commission—Sales from sales listed and sold through Goodwin Realty, Inc. Office.
>
> All MLS & Co.-Brokerage or associated sales made by Sally Citrini are 50-50 with principal office of Goodwin Realty, Inc.
>
> Where involved, reciprocal referral fees are 20%.

Contract agent — Sally Citrini agrees to furnish all supplies and necessary products to operate as a contract agent under Goodwin Realty, Inc.

Goodwin's exclusive listings of the subject property expired at various times in 1979 and 1980. No Goodwin listings were in effect on any of the property after July 1980. About that time, Goodwin told Citrini that all their contracts had terminated. In 1981, negotiations began between Goodwin and another real estate agent who represented the eventual buyers of the property. The first options were executed in early 1981. The sales took place during 1981 and 1982, and Goodwin and the buyers' agent co-brokered, or split, the commissions, totalling some $125,000. Citrini took no part in sales themselves, and Goodwin did not offer to pay her any portion of the commissions.

Citrini filed this action in September 1981, seeking to recover one-half of all commissions arising from the sale of the subject property. At trial, Goodwin obtained a directed verdict relative to one of the tracts at the close of Citrini's evidence; the trial court denied Goodwin's motion as to the other tracts. Citrini then successfully moved for a directed verdict on the remaining issues at the close of all the evidence. The trial court awarded Citrini one quarter of the total commissions (equal to one-half of Goodwin's share). Both parties appeal.

I

The main issue advanced by both sides in their appeals concerns the propriety of the respective directed verdicts. Because we conclude that both parties introduced sufficent evidence to withstand the motions for directed verdict, we hold that the trial court erred on both motions, and we remand for a new trial on all issues.

This case principally required judicial construction of contracts. Contract interpretation depends in the first instance on the language of the instrument itself. When a written contract is free from ambiguity, its interpretation is a question of law for the court and in such cases directed verdict is appropriate. *Falls Sales Co. v. Asheville Contracting Co.*, 292 N.C. 437, 233 S.E. 2d 569 (1977). Similarly, if the legal effect of the second contract alone dictates whether the second contract supersedes a prior

agreement, it is a question of law for the court. *Tomberlin v. Long,* 250 N.C. 640, 109 S.E. 2d 365 (1959).

If, on the other hand, the contract is ambiguous, its interpretation usually requires a factual determination of the intent of the parties; on conflicting evidence of intent, the jury must resolve the issue. *MAS Corp. v. Thompson,* 62 N.C. App. 31, 302 S.E. 2d 271 (1983). The effect of ambiguous language is ordinarily for the jury. *Cape Fear Electric Co. v. Star News Newspapers, Inc.,* 22 N.C. App. 519, 207 S.E. 2d 323, *cert. denied,* 285 N.C. 757, 209 S.E. 2d 280 (1974). Of course, if the purported contract is so patently ambiguous that no enforceable obligation can be discerned, there is no valid contract. *Matthews v. Matthews,* 2 N.C. App. 143, 162 S.E. 2d 697 (1968).

## II

With the foregoing general principles in mind, we first address the directed verdict in favor of Citrini entered at the close of all the evidence. Citrini asserted as grounds (1) that the evidence showed the existence of a contract, obviously meaning the agreement of April, 1979, and Goodwin's breach thereof; and (2) that Goodwin had failed as a matter of law to prove any of his affirmative defenses. The court granted the motion upon considering Goodwin's various defenses. Goodwin assigns error, both because there was evidence that the original contract was no longer in effect and because there was evidence supporting his affirmative defenses.

[1] One of the defenses was novation, that is, that the January 1980 agreement superseded the April 1979 agreement. The 1980 contract does not show on its face whether it supersedes the 1979 contract, and therefore directed verdict on the contract itself would have been improper. *Penney v. Carpenter,* 32 N.C. App. 147, 231 S.E. 2d 171 (1977). It provided that Citrini would receive certain commissions on "listings" and "sales from sales listed." These terms present ambiguities, to the extent that they may mean *all* listings and sales or only those listings and sales generated during the current term of employment. Citrini offered her oral testimony that the later agreement had nothing to do with the earlier agreement and evidence that she had contacted Goodwin at various times after July 1980 regarding commissions allegedly due her. Goodwin testified that he intended by the later

agreement to change the earlier agreement in accordance with discussions which occurred when Citrini started to work for him. He also introduced evidence that listings were renewed shortly after the second agreement and expert testimony that, under the customs of the real estate business, no commissions were due under such agreements after the listings expire or after negotiations are interrupted (as here). Goodwin also elicited testimony from Citrini that she accepted a commission on one of the subject tracts at a rate set by the later contract. This constitutes at least *prima facie* evidence of novation.

On motion for a directed verdict, the court must consider the evidence in the light most favorable to the non-moving party along with every reasonable inference to be drawn therefrom. *Odell v. Lipscomb,* 12 N.C. App. 318, 183 S.E. 2d 299 (1971). If the non-movant has produced any evidence more than a scintilla to support each element of the claim or defense, the court should deny the motion, and a directed verdict entered over such evidence is error. *Hong v. George Goodyear Co.,* 63 N.C. App. 741, 306 S.E. 2d 157 (1983). As noted above, Goodwin introduced evidence of novation which conflicted with Citrini's oral testimony. The trial court thus erred in granting Citrini's motion on this affirmative defense and in taking the issue from the jury. *Penney v. Carpenter.*

### III

[2]    Under the facts of this case, novation constituted a complete defense to an action on the original contract. *See Housing, Inc. v. Weaver,* 52 N.C. App. 662, 280 S.E. 2d 191 (1981), *aff'd,* 305 N.C. 428, 290 S.E. 2d 642 (1982); 66 C.J.S. *Novation* §§ 22-25 (1950). Ordinarily, then, we would not need to address the trial court's rulings on the other affirmative defenses in reversing the directed verdict on the original contract and the judgment thereon. However, the court also granted a directed verdict for Citrini on the affirmative defense that the original contract had been terminated. Since this ruling was also error and since the issue will undoubtedly arise upon retrial, we address it here.

The contract did not contain an expiration date or other indicia of duration. In July of 1980, some fifteen months after execution of the contract, Goodwin told Citrini the contract was terminated; there were no listings or options on the subject prop-

erty at that time. Citrini apparently took no further action until early 1981.

A contract which contains no definite term as to its duration is terminable at will by either party upon reasonable notice after a reasonable time. *Atkinson v. Wilkerson,* 10 N.C. App. 643, 179 S.E. 2d 872 (1971), *rev'd on other grounds,* 285 N.C. 215, 204 S.E. 2d 17 (1974); *Hardee's Food Systems, Inc. v. Hicks,* 5 N.C. App. 595, 169 S.E. 2d 70 (1969); *see also* N.C. Gen. Stat. § 25-2-309 (1965). The court here ruled that whether the contract had been effective for a reasonable time was a jury question, but that defendant's failure to give "notice of intent to terminate at a subsequent specific date" constituted unreasonable notice as a matter of law. The court apparently believed that the law requires a specific procedure for notice; this constituted an erroneous preference for form over substance, since the law requires only that notice be reasonable under the circumstances. Usually this means prior notice. *See City of Gastonia v. Duke Power Co.,* 19 N.C. App. 315, 199 S.E. 2d 27, *cert. denied,* 284 N.C. 252, 200 S.E. 2d 652 (1973); *J. C. Millett Co. v. Park & Tilford Dist. Corp.,* 123 F. Supp. 484 (N.D. Cal. 1954). But on at least one occasion this Court has approved notice effective immediately. *Cabarrus Mem. Hosp. v. Whitley,* 18 N.C. App. 595, 197 S.E. 2d 631 (1973). Considering that in this case, Goodwin notified Citrini of his intent to terminate in July 1980, she took no action in response, and no performance or other activity occurred for at least six months thereafter, we conclude that there was at the very minimum a jury question as to whether notice became effective sometime during the six-month period. *See Cabarrus Mem. Hosp.* To hold otherwise would place undue emphasis on the formal mechanics of notice, to the detriment of reasonable commercial practice. Persons giving notice in improper form would remain at the mercy of the other party indefinitely. Therefore, we conclude that the court should not have taken the notice issue from the jury in this case.

IV

[3] The court granted a directed verdict to Goodwin at the close of Citrini's evidence on the issue of commissions on one of the tracts, the Guess tract, which was not named in the contract itself but which Citrini claimed "tied in" with the sale of the others.

Goodwin asserted that Citrini had presented insufficient evidence to bring the Guess tract within the scope of the 1979 contract. Citrini contends the ruling was erroneous.

The key language on this question is the phrase "ties in." It is not sufficiently unambiguous that its application rested solely with the court. *See Falls Sales Co. v. Asheville Contracting Co.* The dictionary provides no definite guidance: "tie in" means "to bring into connection with something relevant: join in a unified whole." Webster's Third New International Dictionary 2391 (1966). Citrini therefore properly introduced extrinsic evidence to show its interpretation and application. She introduced evidence that the tracts were listed together, that she had introduced Goodwin to Guess at which time he obtained the first listing, and that the property was eventually sold to related buyers. Goodwin does not dispute these assertions. Goodwin merely asserts that the tracts were not sold together or to the same purchaser. It therefore appears that Citrini produced more than a scintilla of evidence that the Guess tract was "tied in" with the others, and the directed verdict at the close of her evidence was error. *Hong v. George Goodyear Co.*

V

[4]   We next consider Goodwin's unsuccessful general motion for directed verdict made at the close of Citrini's evidence. Goodwin, after presenting evidence, did not renew his motion at the close of all the evidence. Instead, Citrini moved for a directed verdict, and the court granted it after extensive argument and discussion. No motion by Goodwin at the close of all the evidence appears in the record.

Ordinarily, when a defendant's motion for directed verdict at the close of the plaintiff's evidence is denied, he waives the right to assign error to the denial by presenting his own evidence.

'Technically a party waives his right to a directed verdict, if the motion is made at the close of his opponent's case, and thereafter he introduces evidence in his own behalf. However he may renew the motion at the close of all the evidence. If the party fails to renew the motion he may not move for judgment notwithstanding the verdict nor may he claim error on appeal from denial of the motion at the close

of the opponent's evidence. The renewed motion will be judged in the light of the case as it stands at that time. Even though the court may have erred in denying the initial motion, this error is cured if subsequent testimony on behalf of the moving party repairs the defects of his opponent's case.'

*Overman v. Gibson Products Co.*, 30 N.C. App. 516, 519, 227 S.E. 2d 159, 161 (1976) (quoting 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2534, at 588-90 (1971) (describing procedure under identical federal rule)). The rationale for the waiver rule was set forth by the United States Supreme Court:

> Without going into the question whether the motion was properly made in this case, it is sufficient to say that defendant waived it by putting in his testimony. A defendant has an undoubted right to stand upon his motion for a non-suit, and have his writ of error, if it is refused; but he has no right to insist upon his exception, after having subsequently put in his testimony and made his case upon the merits, since the court and jury have the right to consider the whole case as made by the testimony. It not infrequently happens that the defendant himself, by his own evidence, supplies the missing link, and, if not, he may move to take the case from the jury upon the conclusion of the entire testimony. [Citations omitted.]

*Bogk v. Gassert*, 149 U.S. 17, 23, 37 L.Ed. 631, 634, 13 S.Ct. 738, 739-40 (1893); *see* 5A J. Moore & J. Lucas, *Moore's Federal Practice* § 50.05 (2d ed. 1984) (policy still applicable). The rule is consistent with North Carolina procedure before the adoption of the Rules of Civil Procedure. *See* N.C. Gen. Stat. § 1-183 (1953) (motion for nonsuit waived by introduction of evidence). The waiver rule also mirrors the rule now in effect in criminal cases. North Carolina Rules of Appellate Procedure 10(b)(3) (July 7, 1983). Accordingly, we hold that in view of this consistent policy Goodwin waived his right to complain of the denial of his motion on appeal.

A review of Goodwin's own evidence demonstrates the wisdom of the rule. Although he now vigorously contends that Citrini's evidence showed that the 1979 contract had expired, and that the directed verdict should therefore have been granted, Goodwin himself testified as to his "peculiar circumstances" with respect to Citrini at the time the properties were sold. His co-

broker corroborated Goodwin's testimony by stating that he had "advanced" Goodwin certain monies in departure from ordinary practice. This testimony, while not supplying the "missing link," served to materially support Citrini's case as evidence of conduct acknowledging the existence of a continued obligation to Citrini. This assignment of error is accordingly without merit.

## VI

The trial court made various rulings on parol evidence to which Goodwin now assigns error. Since no issues reached the jury, no prejudice could have resulted. Nevertheless, to avoid confusion upon retrial, we address the questions briefly here.

A. Citrini introduced in evidence the April 1979 contract, which defendant claims violated the parol evidence rule. Since that rule bars evidence of *prior agreements*, and since Citrini also introduced the 1980 contract, Goodwin contends that the rule barred any testimony as to the earlier agreement. This argument, while appealing, overlooks the fact that Citrini contended from the first, and the contracts allowed the interpretation, that the 1980 contract did not supersede the 1979 contract. It further overlooks the fact that the 1980 agreement was not yet in evidence at the time the 1979 agreement was introduced. This ruling was therefore correct.

B. The trial court also allowed Citrini to testify over Goodwin's objection that she did not, by signing the 1980 agreement, intend to change the 1979 agreement. Her testimony as to her conduct or the statements she made to others (for example, her telephone conversations with Goodwin after the 1980 agreement was signed) expressing such intent was proper. Absent fraud or mistake, however, the undisclosed intention of one party does not constitute relevant evidence of the effect of an agreement. *Root v. Allstate Insur. Co.*, 272 N.C. 580, 158 S.E. 2d 829 (1968). Citrini argues incorrectly that the novation issue makes the "undisclosed intent" testimony admissible. *See Commercial Nat'l Bank v. Charlotte Supply Co.*, 226 N.C. 416, 38 S.E. 2d 503 (1946) (same rules apply, "perhaps with added propriety"). Consequently, evidence of the parties' undisclosed or secret intent is not admissible.

C. Goodwin contends that the trial court improperly sustained an objection to his question to Citrini regarding Citrini's

professional relationship with Goodwin in 1979. We agree, and summarily dispose of this issue. It does not appear that the 1979 contract established any sort of professional relationship which would bar such evidence, since it was merely an agreement to split commissions.

D. Goodwin contends that the trial court erred in excluding certain questions propounded to Citrini concerning customary real estate practices. Citrini testified that she had sold realty for only a brief period before going out of business, and that she was unfamiliar with commercial sales. Absent some better foundation, then, the trial court did not abuse its discretion in excluding the opinion testimony asked for. *See generally* 1 H. Brandis, *North Carolina Evidence* §§ 122-24 (2d rev. ed. 1982).

E. Finally, Goodwin offered evidence regarding negotiations concerning listings and their effect on contract duration which the trial court excluded. The 1979 agreement does not on its face indicate that it contains all the terms of the contract. The 1979 contract does not contain any expiration terms, and the evidence of negotiations is not inconsistent with the agreement in any way. Consequently, parol evidence should have been admitted. *Craig v. Kessing*, 297 N.C. 32, 253 S.E. 2d 264 (1979); 2 H. Brandis, *North Carolina Evidence* § 252 (2d rev. ed. 1982).

VII

Because there must be a new trial on all issues, the correctness of the judgment becomes a moot question. Therefore, we reverse the orders directing verdicts for each party and remand for further proceedings consistent with this opinion.

Reversed and remanded.

Judges HILL and JOHNSON concur.