**HOMESTORE MOBILITY TECHNOLOGIES, INC.,**
Plaintiff,

v.

**HR SOLUTIONS, INC. and Howard S. Denmark, Defendants.**

No. 1:01CV00933.

United States District Court, M.D. North Carolina.

Nov. 7, 2001.

Blas P. Arroyo, Michael S. Connor, Kirk T. Bradley, Alston & Bird, LLP, Charlotte, NC, for plaintiff.

Theodore F. Claypoole, Charles Robert Rhodes, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, James W. Miles, Jr., Stern & Klepfer, LLP, Greensboro, NC, fir defendants.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This matter is before the court on Plaintiff's Motion for Preliminary Injunction.

For the reasons set forth in this opinion, Plaintiff's motion will be denied.

## I. Introduction

Plaintiff Homestore Mobility Technologies, Inc. ("Homestore") filed its Complaint against Howard Denmark and HR Solutions, Inc. on October 9, 2001, asserting claims of breach of contract, federal copyright infringement, federal unfair competition, and unfair and deceptive trade practices under North Carolina law. Upon motion by Homestore, a temporary restraining order was issued by this court on October 9, 2001, blocking Denmark and HR Solutions, Inc. from, *inter alia*, marketing or selling a software product known as "ReloBase."

Homestore now urges the court to issue a preliminary injunction to forestall what it believes would be irreparable harm to Plaintiff's business interests if Defendants were allowed to continue marketing the ReloBase product. A hearing on the preliminary injunction motion was conducted October 23, 2001.

## II. Facts

The present litigation arises out of an agreement between Plaintiff's predecessor-in-interest, the Hessel Group ("Hessel") and Co–Defendant Howard Denmark, known as the Software Marketing Agreement (the "Agreement"). By this instrument, entered into April 18, 1988, Denmark granted Hessel exclusive marketing rights to a software program authored by Denmark, known as the Domestic Relocation Tracking System or "DRTS." The DRTS software was designed to assist large companies in tracking the tax and expense information associated with the relocation of employees. *See* Denmark Aff., Ex. A.

Under this agreement, Hessel assumed the exclusive right to market and sell the DRTS system and agreed to pay Denmark royalties of 25% of actual gross sales of DRTS on a quarterly basis. Denmark stipulated that the name Domestic Relocation Tracking System and initials DRTS would be the property of Hessel and would not be used by Denmark without Hessel's permission. The agreement also provided that in the event Hessel discontinued the marketing and/or sale of DRTS for three consecutive months, Denmark could serve written demand upon Hessel requesting that marketing and/or sales recommence. If Hessel failed to comply with Denmark's demand within three months, the agreement would terminate without further notice. The agreement did not contain any language specifying a durational term for the agreement. *See id.*

The parties operated under the terms of this agreement for approximately 13 years. In September 2000, Hessel was acquired by Homestore, which markets web-based relocation software programs that are in direct competition with DRTS. Defendant Denmark was not given notice of this acquisition and learned of it by visiting Hessel's website. *See id.* ¶ 18.

After the acquisition of Hessel, Homestore continued to market its relocation software products, named "Reloviews" and "RMS," in competition with DRTS. In July 2001, while visiting Homestore's website, Denmark observed that the Reloviews and RMS products were displayed by name and product description on the company's webpage, while DRTS was only listed under "Downloads" on the company's product page and was not accompanied by a product description. In addition, Denmark noted that the website advertised employment for persons to transfer customer information from DRTS into Reloviews. Denmark further discovered that Homestore's marketing brochure contained detailed information on Reloviews and RMS,

but did not include any mention of DRTS. *See id.* ¶¶ 18–20 and Ex. D.

About the same time, Denmark obtained access to certain documents in Homestore's computer network which indicated an intent on the part of Homestore to replace DRTS with Reloviews. *See id.* ¶ 23 & Exs. E, F. During conversations with Homestore employees in the July–September 2001 time frame, Denmark was told that "Homestore's sales force has been instructed not to sell DRTS unless it is specifically requested by the customer and that it is Homestore's intention to migrate all DRTS customers to Reloviews." *Id.* ¶ 20.

On August 15, 2001, Denmark gave notice to Homestore that he intended to terminate the exclusive marketing agreement effective September 15, 2001, which date was later extended to September 30, 2001, as a result of the terrorist attacks. On October 1, 2001, Denmark and his company, HR Solutions, Inc., began marketing DRTS under a new name, "ReloBase." As part of their marketing efforts, Defendants established a website which identified the ReloBase product as "the same program" as DRTS, now available "exclusively" from HR Solutions. The website also stated that DRTS's previous vendor had been purchased by another firm. *See* Oltman Decl. at ¶¶ 11–12.

Additionally, Defendants sent a mass mailing to numerous customers of DRTS with the phrase "An urgent message from the authors of DRTS software" printed on the outside of the envelope. *Id.* at Tab 2. The letter solicited the sale of ReloBase and displayed the DRTS mark, stating that the program was now available "exclusively" from HR Solutions. *Id.* at Tab 3.

Defendants do not contest Plaintiff's averment that royalties were paid in a timely fashion to Denmark throughout the duration of the agreement.

## III. Discussion

### A. Standard for a Preliminary Injunction to Issue

 A preliminary injunction is "an extraordinary remedy ... to be applied only in the limited circumstances which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir.1992). In determining whether to grant or deny a preliminary injunction, the Fourth Circuit has consistently adhered to the "hardship balancing test" set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir.1977). Under this test, the moving party must first demonstrate the likelihood of irreparable harm if a preliminary injunction does not issue. *Direx Israel*, 952 F.2d at 812. The required irreparable harm "must be neither remote nor speculative, but actual and imminent." *Id.*

 If a plaintiff succeeds in making a clear showing that irreparable harm will result without injunctive relief, the court must then balance the likelihood of that harm against the likelihood of harm to the defendants if the injunction is granted. *Id.* If the balance "tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Id.* at 813 (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991)). If the balance tips more toward the defendant, the plaintiff must make a stronger showing on the merits to prevail. *Id.*

B. *Analysis*

■ Homestore has failed to demonstrate that it is entitled to relief because the harm it has asserted is not irreparable. Even if irreparable harm were shown, the balance of hardships would not tip in Homestore's favor. *See Direx Israel*, 952 F.2d at 812.

1. *Homestore has failed to demonstrate the likelihood of irreparable harm.*

Homestore asserts that Defendants' marketing of the ReloBase product to Homestore's DRTS customers will divert Homestore's customers to HR Solutions, destroy the customer goodwill Homestore and its predecessor Hessel have developed over the duration of the Agreement, damage the DRTS trade name, and generally destroy Homestore's market for the DRTS program and related services. (Pl.'s Mem. Supp. Pl.'s Mot. T.R.O. and Prelim. Inj. at 11–13.)

These allegations of harm are each premised upon the assumption that Plaintiff has a legally-cognizable interest in the DRTS program after September 30, 2001, Defendants' termination date. Plaintiff, however, has failed to prove that this assumption is valid. All the evidence points to the conclusion that the agreement between Denmark and Hessel was terminable-at-will. The agreement did not provide any definite term for its duration. Contrary to Plaintiff's assertion, the "termination clause" at ¶ 3(D) of the Agreement does not specify a term of duration, but merely provides Denmark with a right to terminate upon the attainment of certain conditions.

■ Under North Carolina law, such an agreement is presumed to be terminable-at-will upon reasonable notice. *See Citrini v. Goodwin*, 68 N.C.App. 391, 397, 315 S.E.2d 354, 359 (1984). "Reasonable" notice is usually construed as prior notice.[1] *See id.* Under the present circumstances, we find no reason to believe that Denmark's 45–day notice period was unreasonable.

Without further evidence that Plaintiff had a legally-cognizable interest in the DRTS system after September 30, 2001, the court cannot say with certainty that Homestore has suffered any actionable harm, much less irreparable, actual and imminent harm. *See Direx Israel*, 952 F.2d at 812. Even if Homestore prevails on the merits of its claims, any financial loss attributable to DRTS customers migrating to HR Solutions' ReloBase product would be offset by Homestore's active marketing of its own competing products, Reloviews and RMS.

2. *Even if Homestore had made a showing of irreparable harm, the balance of hardships does not tip in its favor.*

■ Assuming *arguendo* that Plaintiff were to demonstrate a likelihood of irreparable harm, Defendants' potential injury if an injunction were granted weighs heavily against granting Homestore's motion. *See Direx Israel*, 952 F.2d at 813.

If the injunction is granted in favor of Homestore, the likelihood that Denmark and HR Solutions will suffer grave financial consequences is substantial. Denmark does not have any right or interest in any commercial software program other than DRTS and relies on its royalties for in-

---

1. As the *Citrini* court noted, even notice which was "effective immediately" was upheld on at least one occasion by the Court of Appeals. *See Citrini v. Goodwin*, 68 N.C.App. 391, 397, 315 S.E.2d 354, 359 (1984) (citing *Cabarrus Mem. Hosp. v. Whitley*, 18 N.C.App. 595, 197 S.E.2d 631 (1973)).

come. *See* Denmark Aff. ¶ 27. If Homestore prevails on its motion, the record indicates not only that Homestore will maintain the exclusive marketing rights to DRTS, but that it will continue to market its competing software products and, furthermore, may actively pursue its strategy to "migrate" DRTS customers to those competing products. The consequences of such a strategy are likely to be the diminution and eventual cessation of DRTS royalty payments to Denmark, while Denmark and HR Solutions are denied any opportunity to market ReloBase in competition with Homestore's products.

By contrast, if the injunction is denied, Homestore may continue to compete in the software relocation market with its products Reloviews and RMS. Homestore may lose a portion of the DRTS market at least until this litigation is resolved; however, as the record contains credible evidence that Homestore was not actively marketing DRTS before this litigation arose, that consideration does not tip the scales in Plaintiff's favor.

## IV. Conclusion

Homestore has not shown a sufficient likelihood of irreparable harm to prevail on its motion for a preliminary injunction. Therefore, this court will deny Plaintiff's Motion for Preliminary Injunction.