CHICAGO TITLE INSURANCE COMPANY, PLAINTIFF v. HILARY H. HOLT, DE-FENDANT AND THIRD-PARTY PLAINTIFF v. DAVID B. BLANCO AND HOUSE & BLANCO, P.A., THIRD-PARTY DEFENDANTS

No. 7721SC371

(Filed 16 May 1978)

1. **Attorneys at Law § 5.1— errors in certifying title to real property—who may sue**

   It is generally held that attorneys may be held liable for errors in certifying title to real property only to those to whom the certification is made and who enjoy privity of contract with such attorneys.

2. **Attorneys at Law § 5.1— malpractice action—parties who may sue—contract action**

   Claims for relief for attorney malpractice are actions sounding in contract and may properly be brought only by those who are in privity of contract with such attorneys by virtue of a contract providing for their employment.

3. **Contracts § 25.1; Attorneys § 5.1— attorneys' contract with corporation—individual not in privity with attorneys—malpractice action—complaint insufficient**

   Complaint of the third party plaintiff was insufficient to state a claim upon which relief could be granted where the complaint alleged that, because the third party plaintiff served as either vice-president or consultant to the firm which was represented by the third party defendant law firm, the attorneys were therefore the third party plaintiff's attorneys also and were liable to him if they failed properly to perform their duties as attorneys under their contract of employment, since one who is not a party to a contract may not maintain a claim for relief for its breach, and third party plaintiff did not allege facts establishing privity of contract with third party defendant attorneys.

APPEAL by defendant third-party plaintiff from *Albright, Judge.* Judgment entered 7 March 1977 in Superior Court, FOR-SYTH County. Heard in the Court of Appeals 9 February 1978.

This appeal involves an action brought against attorneys by one other than their immediate client for alleged negligence in carrying out legal duties on behalf of the immediate client, a corporation. The defendant third-party plaintiff filed complaint against the third-party defendants under alternative theories of tort or contract.

Chicago Title Insurance Company [hereinafter "Chicago Title"] initiated an action against the defendant third-party plaintiff, Hilary H. Holt, on 20 August 1976, alleging that Chicago Title issued twelve title insurance policies covering condominium units which were built and sold to various grantees by Land Limited of America, Inc. [hereinafter "LLA"]. The policies were issued to Winston-Salem Savings and Loan [hereinafter "the Bank"] which had made purchase money loans to the various grantees. Pursuant to the policies, Chicago Title insured that the deeds of trust on the twelve units, which the Bank took as security for the loans, constituted first liens upon those units.

As the units were newly constructed, Chicago Title required both the owner of the condominium project and the general contractor for that project to submit certain form "lien waivers" as a condition precedent to issuing the policies. By these lien waivers the owner and the general contractor warranted that there were no unpaid materialmen or subcontractors who had furnished goods or services to the properties. The lien waivers contained an agreement by the owner and the general contractor to indemnify Chicago Title should it incur any liability as a result of the existence of any unpaid subcontractors who might assert mechanics liens which had priority over the deeds of trust held by the Bank. Twelve of these lien waivers were signed by one Doug Twiddy on behalf of LLA as the owner of the project. In addition, Holt signed each of the lien waivers as President of H. H. Holt Construction Company, the general contractor for the project.

In reliance upon the lien waivers, Chicago Title issued the policies of title insurance. Warren Brothers Company, which had provided goods and services to the project, subsequently filed a claim of lien and obtained a judgment against LLA in a separate action. As this lien had priority over the insured deeds of trust, Chicago Title satisfied the judgment and instituted this case against Holt based upon the indemnity agreements contained in the lien waivers.

Holt filed an answer on 20 October 1976 and denied that he was the general contractor for LLA. He further alleged *inter alia* that he served either as a consultant to LLA or as its vice-president and that his signature on the lien waivers was obtained by fraud, misrepresentation, or mistake. Holt additionally alleged in the answer that the third-party defendants, David Blanco [hereinafter "Blanco"] and House & Blanco, P.A. [hereinafter the "Professional Association"], the attorneys who closed the loans on the condominium units and certified title to Chicago Title, had failed to use reasonable care to determine the existence of the unpaid lien creditors. Based upon these allegations, Holt contended that he was not liable to Chicago Title or, alternatively, that he was only jointly liable with LLA, the Professional Association, Blanco and others.

Holt filed a third-party complaint against Blanco and the Professional Association on 25 October 1976. By this complaint he alleges that the Professional Association and Blanco are liable to him for losses he has or may sustain. He alleges this liability arises from the undertaking of Blanco and the Professional Association to represent the seller (LLA), the buyers, and the lender (the Bank) in the real estate closings. Holt further alleges he relied upon the advice of the attorneys, Blanco and the Professional Association, in signing the indemnity agreements, and that they were obligated to determine the existence of any unpaid materialmen since Blanco certified title to Chicago Title. Holt additionally alleges that Blanco and the Professional Association had an affirmative duty to determine whether there were unpaid materialmen or subcontractors, which duty they failed to perform.

On 12 November 1976, Blanco and the Professional Association, pursuant to G.S. 1A-1, Rule 12(b)(6), moved to dismiss the third-party complaint on the ground that it failed to state a claim upon which relief could be granted. The trial court granted this motion on 7 March 1977, and from the order granting the motion, Holt appealed.

*A. Carl Penney for defendant and third-party plaintiff appellant.*

*Larry B. Sitton and E. Garrett Walker for third-party defendant appellees.*

.

MITCHELL, Judge.

The appellant, Hilary H. Holt, assigns as error the trial court's dismissal of his third-party complaint against the appellees, Blanco and the Professional Association, and contends that his third-party complaint sets forth a valid claim for relief alleging attorney malpractice on the part of the appellees. He contends his complaint states a claim upon which relief could be granted under either a theory of breach of contract or a theory of tort liability for negligence and that his complaint properly alleged each theory in the alternative.

We point out at the outset that throughout this opinion reference is made to a cause of action for "attorney malpractice" rather than "legal malpractice" or some other designation of the claim for relief alleged. Our use of this terminology is prompted by our concern that the use of the term "legal malpractice" might well lead to confusion by its connection in some minds with "legal" or "lawful" conduct.

There is disagreement among the various jurisdictions of the United States as to whether claims for attorney malpractice are grounded in contract or in tort. Many of the cases appear to blur distinctions between torts and breaches of contract. *See*, Annot., 45 A.L.R. 3d 1181 (1972). Perhaps the nearest approximation of a general rule as to the nature of claims for attorney malpractice is set forth in 7 C.J.S., Attorney and Client, § 140, p. 978, which states:

> Although the liability of an attorney on the ground of negligence is ordinarily enforced by an action on the case for negligence in the discharge of his professional duties, the liability in reality rests on the attorney's employment by the client and *is contractual in its nature*. Hence, before the attorney can be made liable, it must appear the loss for which he is sought to be held arose from his failure or neglect to discharge some duty which was fairly within the purview of his employment. Moreover, *an attorney is liable* for negligence in the conduct of his professional duties *to his client alone*, that is, to the one between whom and the attorney the *contract* of employment and service existed, and not to third parties. (Emphasis added.)

[1]   The requirement of an attorney-client relationship or privity of contract as a basis for a claim against an attorney has been recognized by the majority of jurisdictions. It is generally held that attorneys, such as the appellees, may be held liable for errors in certifying title to real property only to those to whom the certification is made and who enjoy privity of contract with such attorneys. *National Savings Bank v. Ward*, 100 U.S. 195, 25 L.Ed. 621 (1880); Annot., 59 A.L.R. 3d 1176 (1974); Annot., 34 A.L.R. 3d 1122 (1970); Whitman, *Transferring North Carolina Real Estate Part I: How the Present System Functions*, 49 N.C. L. Rev. 413, 442-43 (1971). The same principle has been applied by a majority of jurisdictions to cases involving allegations of attorney malpractice with regard to matters other than title to real property. Annot., 45 A.L.R. 3d 1181 (1972). Thus, the majority of jurisdictions have relied more heavily upon the law of contracts than the law of torts in establishing the requirements for a valid claim for relief for attorney malpractice.

Our research has revealed no North Carolina case determining whether claims for attorney malpractice are claims sounding in contract or in tort. We find some support for the view of the majority of jurisdictions, that such claims are based upon the law of contracts, in the fact that the decided cases of this jurisdiction involve claims by immediate clients who sought to hold their attorneys liable. Although not determinative in itself of the issue, it is relevant to note that the Supreme Court of North Carolina has given no indication in the decided cases that claims for attorney malpractice may be brought on behalf of individuals not in privity of contract with the attorneys upon the contracts of employment. 1 Strong, N.C. Index 3d, Attorneys at Law, § 5.1, pp. 581-2, and cases cited.

[2]   We concur in the view applied by, although not always specifically stated by, the majority of jurisdictions and hold that claims for relief for attorney malpractice are actions sounding in contract and may properly be brought only by those who are in privity of contract with such attorneys by virtue of a contract providing for their employment. Having so held, we find the appellant did not allege facts establishing such privity and was not entitled to proceed further on his complaint against the appellees.

[3]   Subject to certain exceptions not relevant here, one who is not a party to a contract may not maintain a claim for relief for

its breach. *Matternes v. City of Winston-Salem*, 286 N.C. 1, 209 S.E. 2d 481 (1974); *Jones v. Elevator Co.*, 231 N.C. 285, 56 S.E. 2d 684 (1949). Here, the appellant alleged in his complaint that he served as either vice-president of LLA or as its consultant, and that the appellees as attorneys for LLA were, therefore, also his attorneys and liable to him if they failed properly to perform their duties as attorneys under their contract of employment. We do not agree.

Duties of the magnitude and seriousness involved when an attorney at law undertakes to represent a client should arise only from his contract of employment with his client as governed by the law of contracts. *See*, 7 Am. Jur. 2d, Attorneys at Law, § 167, p. 146. To hold otherwise would encourage a party to contractual negotiations or other business matters to forego retaining counsel and later sue counsel representing the other contracting parties for attorney malpractice if the result of the negotiations should prove disfavorable in some way. Accordingly, we hold that the appellees owed no duty to the appellant by virtue of their contract of employment with their client LLA, regardless of whether the appellant is viewed as vice-president of or a consultant to LLA. *See, Chalpin v. Brennan*, 114 Ariz. 124, 559 P. 2d 680 (1977); *Harding v. Bell*, 265 Or. 202, 508 P. 2d 216 (1973); *Ronnigen v. Hertogs*, 294 Minn. 7, 199 N.W. 2d 420 (1972); *Bresette v. Knapp*, 121 Vt. 376, 159 A. 2d 329 (1960); *Delta Equipment and Construction Co., Inc. v. Royal Indemnity Co.*, 186 So. 2d 454 (La. Ct. of App. 1966). This holding applies to and is determinative of the allegations of negligence by the appellees, the allegations concerning their representation of multiple parties, and all other allegations.

The appellant contends that, even though he may not be a party to the contract of employment between LLA as client and the appellees as attorneys, he should, nevertheless, be permitted to maintain this action as a third-party beneficiary of that contract of employment. This contention is without merit.

In *Vogel v. Supply Co.* and *Supply Co. v. Developers, Inc.*, 277 N.C. 119, 177 S.E. 2d 273 (1970), the Supreme Court of North Carolina expressly approved the categories of third-party beneficiaries discussed in the Restatement of Contracts and stated:

The American Law Institute's Restatement of Contracts pro-
vides a convenient framework for analysis. Third party
beneficiaries are divided into three groups: *donee*
beneficiaries where it appears that the "purpose of the prom-
isee in obtaining the promise of all or part of the perform-
ance thereof is to make a gift to the beneficiary"; *creditor*
beneficiaries where "no purpose to make a gift appears" and
"performance of the promise will satisfy an actual or sup-
posed or asserted duty of the promisee to the beneficiary";
and *incidental* beneficiaries where the facts do not appear to
support inclusion in either of the above categories. Restate-
ment of Contracts § 133 (1932). While duties owed to donee
beneficiaries and creditor beneficiaries are enforceable by
them, Restatement of Contracts §§ 135, 136, a promise of in-
cidental benefit does not have the same effect. "An incidental
beneficiary acquires by virtue of the promise no right against
the promisor or the promisee." Restatement of Contracts
§ 147.

277 N.C. at 127, 177 S.E. 2d at 278.

The appellant was clearly not a donee beneficiary or creditor
beneficiary of the contract by which LLA retained the appellees
as counsel. At most, he was merely an incidental beneficiary who
acquired no rights by virtue of the contract. *Matternes v. City of
Winston-Salem*, 286 N.C. 1, 209 S.E. 2d 481 (1974); *Vogel v. Sup-
ply Co.* and *Supply Co. v. Developers, Inc.*, 277 N.C. 119, 177 S.E.
2d 273 (1970).

The complaint contained no allegation that LLA, which is
alleged to have employed the appellees to certify title to Chicago
Title, had any intent to benefit the appellant or owed him any
duty which would be fulfilled by such certification. Neither are
there any allegations in the complaint that the appellees promised
to, or did in fact, certify the title to the appellant. The intention
of the parties to the contract of employment determines whether
the plaintiff is a mere incidental beneficiary thereof. Here, the al-
legations of the complaint do not indicate the parties intended the
appellant to be anything more than a mere incidental beneficiary,
and as such he cannot maintain a claim for relief upon a breach of
contract merely because he would receive a benefit from its per-
formance or because he is injured by the breach thereof. *Mat-*

*ternes v. City of Winston-Salem*, 286 N.C. 1, 209 S.E. 2d 481 (1974). Thus, the trial court properly allowed the appellees' motion to dismiss.

A distinct minority of jurisdictions have found that actions for attorney malpractice are actions in tort. Although we expressly reject this view, its application in the present case would be of no assistance to the appellant. Those jurisdictions grounding claims for attorney malpractice in tort have held attorneys liable only to those whose injuries could have been reasonably foreseen by the attorneys. *Williams v. Polgar*, 391 Mich. 6, 215 N.W. 2d 149 (1974); Annot., 45 A.L.R. 3d 1181 (1972).

Here, the reliance, if any, by the appellant was neither reasonable nor foreseeable. The appellant does not allege in his complaint that the appellees' certificates of title purported to certify that no unrecorded liens existed. As a general rule, attorneys in North Carolina, in their certifications of title, purport to discover and list only such title defects as may be discovered by an examination of the public records. Whitman, *Transferring North Carolina Real Estate Part I: How the Present System Functions*, 49 N.C. L. Rev. 413, 443-46 (1971). Defects not discoverable by examination of public records are, therefore, either expressly or impliedly excluded from such certifications. Thus, absent a specific allegation that the appellees' certificate of title purported to certify that no unrecorded liens existed, the appellees had no affirmative duty to discover such unrecorded liens and could not reasonably have foreseen that their failure to do so might cause injury to the appellant.

It is difficult to determine from the complaint, upon what theory the appellant bases his contention that the appellees had the duty to determine whether unrecorded liens existed. Had they searched for such unrecorded liens and indicated in their certificate of title that none existed, there would have been no necessity for Chicago Title to procure the lien waivers from LLA and the appellant. Chicago Title then would not have needed the waivers, as it could have gone against the appellees as certifying attorneys if such liens were later discovered to exist.

The appellant's contention that the complaint properly stated a claim for relief against the appellees for their undertaking to represent multiple parties would also be without merit if pursued

under a theory of tort. Whether actions for attorney malpractice are actions in contract as we have held, or actions in tort as we have held they are not, the appellant failed to state a claim for improper representation of multiple parties upon which relief could be granted. Disciplinary Rule 5-105 of the North Carolina Code of Professional Responsibility permits an attorney to represent multiple clients if he can adequately represent the interests of each and if each consents to the representation after full disclosure. The appellant does not allege in his complaint that the appellees failed to make such disclosure or that the alleged clients were otherwise less than fully aware of the situation. He does not, in fact, even allege that he was unaware of this situation. The allegations of the complaint concerning representation of multiple clients were, therefore, insufficient to present a valid claim against the appellees. Annot., 28 A.L.R. 3d 389 (1969).

The appellant has advanced other contentions to the effect that the complaint stated a claim upon which relief could be granted. Although our holding makes it unnecessary, we have reviewed each of these contentions carefully and find that they do not present any claim upon which relief could be granted for violation of the contractual duty owed by an attorney to his client.

The judgment of the trial court dismissing the appellant's third-party complaint against the appellees on the ground that it failed to state a claim upon which relief could be granted was proper and is

Affirmed.

Judges MORRIS and CLARK concur.