459 S.E.2d 801 (1995)
TITLE INSURANCE COMPANY OF MINNESOTA, Plaintiff,
v.
SMITH, DEBNAM, HIBBERT AND PAHL, a North Carolina General Partnership, and W. Thurston Debnam, Jr., Fred J. Smith, Jr., Carl W. Hibbert, Jr., J. Larkin Pahl, John W. Narron and Bettie Kelley Sousa, General Partners, Defendants.
No. COA94-777.
Court of Appeals of North Carolina.
August 1, 1995.
*803 Perry, Patrick, Farmer & Michaux, P.A., by Roy H. Michaux, Jr. and John H. Carmichael, Charlotte, for plaintiff-appellee.
Crews & Klein, P.C. by Paul I. Klein, Charlotte, for defendants-appellants.
LEWIS, Judge.
This appeal arises out of plaintiff's action for legal malpractice. The jury returned a verdict of $60,000 for plaintiff. The trial court then entered judgment notwithstanding the verdict in the amount of $171,860.35 for plaintiff. From the judgment, defendants appeal.
On 5 October 1988 plaintiff issued a title insurance policy, effective as of 17 August 1988, to First Federal Savings and Loan Association of Raleigh (hereinafter "First Federal"). The policy insured that a First Federal deed of trust, dated 17 August 1988 and securing a loan to Regency Residential, Inc. (hereinafter "Regency"), was a first lien on four tracts of land on Millbrook Road in Raleigh. Plaintiff issued the title insurance policy based on defendant Debnam's certifying that all of the requirements in plaintiff's commitment for title insurance had been met. The requirements included the cancellation of all superior deeds of trust on the property. In fact, two superior deeds of trust, one to Fred and Carolyn Deer (hereinafter "the Deers") and one to First Wachovia Mortgage Company (hereinafter "Wachovia"), were not cancelled. Thus, as to the portion of the property covered by the Deer and Wachovia deeds of trust, First Federal's lien was not superior.
The property described in the Deer and Wachovia deeds of trust was previously owned by the Deers and was sold by them to Regency. At the time of the sale, there was a deed of trust on the property to Wachovia. The Deers agreed to finance the sale and take as security for the debt a deed of trust on the property. The note to the Deers was referred to at trial as a "wraparound loan." That is, it included within its total the balance owed on the Wachovia note.
In December 1990, First Federal was taken over by the Resolution Trust Corporation (hereinafter "RTC") pursuant to a purchase and assumption agreement. In response to a claim on the title insurance policy by First Federal, plaintiff paid, in April 1991, $164,109.96 to the Deers and $7,341.79 to Wachovia. The Wachovia deed of trust was then cancelled. The Deers assigned their rights under their deed of trust to plaintiff, and the Deer deed of trust was not cancelled. Plaintiff instituted this action against defendants for Debnam's negligent certification of title and sought as part of this action a judicial determination that it was, in fact, liable to its insured under the policy. After the close of evidence, the court so ruled, and while the jury was in deliberation, plaintiff cancelled the Deer deed of trust. The jury returned a verdict for plaintiff in the amount of $60,000. The trial court then granted judgment notwithstanding the verdict for plaintiff in the amount of $171,860.35.

I.
Defendants' first contention on appeal is that plaintiff had no damages at the time it filed suit, and therefore its claim was not actionable. Defendants point to the fact that *804 plaintiff received an assignment of rights under the Deer deed of trust in exchange for the payment made to the Deers. Thus, until the Deer deed of trust was cancelled, plaintiff had suffered no damages. Defendants moved for a directed verdict based on this argument, and the court denied the motion. We agree that plaintiff suffered no actual damages until it cancelled the deed of trust, which it did while the jury deliberated. However, we do not agree that defendants were entitled to a directed verdict.
In North Carolina, a plaintiff may recover nominal damages in a negligence action. The Asheville School v. D.V. Ward Constr., Inc., 78 N.C.App. 594, 599, 337 S.E.2d 659, 662 (1985), disc. review denied, 316 N.C. 385, 342 S.E.2d 890 (1986). Nominal damages are recoverable where some legal right has been invaded but no actual loss or substantial injury has been sustained. Potts v. Howser, 274 N.C. 49, 61, 161 S.E.2d 737, 747 (1968). Nominal damages are awarded in recognition of the right and of the technical injury resulting from its violation. Id. The idea of the redress of grievances in court by an orderly process has been favored in our law from the beginning. Especially in a case involving the negligence of a professional person, the redress of the wrong may be no more than the showing, in court, that the attorney did not do his job. Even where the plaintiff has no evidence of actual damages, if he is entitled to nominal damages, it is error to grant a directed verdict for the defendant on the basis of the plaintiff's lack of damages. See Robbins v. C.W. Myers Trading Post, Inc., 251 N.C. 663, 666, 111 S.E.2d 884, 886-87 (1960) (holding denial of nonsuit proper even though plaintiff in breach of contract action had produced no competent evidence of damages, since plaintiff was entitled to nominal damages for breach of contract). Further, proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. Jewell v. Price, 264 N.C. 459, 461-62, 142 S.E.2d 1, 3 (1965).
In this case, we believe that the evidence before the court at the time of defendants' motion for directed verdict entitled plaintiff to nominal damages. Plaintiff's legal right to a correct certification of title (see section II.) was denied by Debnam's negligence. The resulting technical injury to plaintiff's rights entitled plaintiff to nominal damages. Thus, the trial court properly denied defendants' motion for directed verdict.
The trial court did subsequently err, however, in entering judgment notwithstanding the verdict for plaintiff. After the jury rendered its verdict, the court concluded that plaintiff was entitled to judgment as a matter of law in accordance with plaintiff's earlier motion for directed verdict. Because plaintiff had not yet cancelled the deed of trust when it moved for directed verdict, plaintiff had not proved that it had suffered actual damages. A directed verdict for plaintiff awarding it actual damages at that point would have been improper. Accordingly, judgment notwithstanding the verdict would likewise be improper, as a motion for JNOV is essentially a renewal of the motion for directed verdict. See Henderson v. Traditional Log Homes, Inc., 70 N.C.App. 303, 306, 319 S.E.2d 290, 292, disc. review denied, 312 N.C. 622, 323 S.E.2d 923 (1984). However, the trial court also granted a conditional new trial on the issue of damages alone, in the event that this Court reversed or vacated its JNOV. Because we conclude that JNOV was error, we reverse the judgment as to damages and remand for a new trial on the issue of damages in accordance with the trial court's conditional grant of a new trial. Further, because proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict, Jewell, 264 N.C. at 461-62, 142 S.E.2d at 3, in the case at hand, even though the jury had begun its deliberations, the case could have been resumed and evidence of plaintiff's actual damage could have been presented to the jury. Likewise, such evidence may be presented at retrial.
The dissent concludes the trial court should have granted a directed verdict for defendants at the close of the evidence because plaintiff had not yet suffered actual damages. We would but point out the harsh result which such a ruling would have in this case. Judgment entered on a directed verdict is a final judgment on the merits and *805 operates with full res judicata effect. Taylor v. Tri-County Elec. Membership Corp., 17 N.C.App. 143, 145, 193 S.E.2d 402, 404 (1972). Thus, if directed verdict had been granted for defendants, plaintiff would be forever barred from bringing an action notwithstanding it has now suffered substantial actual damages.

II.
Defendants' next contention is that they cannot be held liable to plaintiff because Debnam, who was Regency's attorney, had no duty to plaintiff regarding the certification of title. Defendants argue that the trial court therefore erred in not granting their motion for directed verdict on this ground. Defendants cite Chicago Title Insurance Co. v. Holt, 36 N.C.App. 284, 244 S.E.2d 177 (1978), in support of their position. That case held that claims for attorney malpractice "may properly be brought only by those who are in privity of contract with such attorneys by virtue of a contract providing for their employment." Id. at 288, 244 S.E.2d at 180. In Chicago Title, a non-client general contractor sued an attorney for the attorney's alleged negligent certification of title. This Court upheld the dismissal of the plaintiff's complaint on the ground that the plaintiff was not in privity of contract with the attorney. Id.
However, in United Leasing Corp. v. Miller, 45 N.C.App. 400, 406, 263 S.E.2d 313, 317, disc. review denied, 300 N.C. 374, 267 S.E.2d 685 (1980), this Court stated:
In the line of cases since our decision in [Chicago Title ], we have re-examined the rule prohibiting recovery in tort by a third person not in privity of contract with a professional person for negligence in the performance of his employment contract with his client, even though such negligence was the proximate cause of a foreseeable injury to the third person.
In Miller, this Court held that a non-client could sue an attorney for negligently certifying title to property. Id. at 407, 263 S.E.2d at 318. In the case at hand, there is substantial evidence in the record that Debnam furnished the title certificate to plaintiff, a non-client, for the purpose of inducing plaintiff to issue a title policy for the benefit of his client and that it was foreseeable that plaintiff would be harmed by any failure to accurately certify the title. See id. at 406-08, 263 S.E.2d at 318 (discussing the factors to be considered in determining whether there is a duty to a non-client). We therefore conclude that Debnam had a duty to plaintiff and that denial of directed verdict for defendants on this basis was correct.

III.
Defendants' next contention is that the trial court erred in applying 12 U.S.C. § 1823(e) to the facts of this case. The court concluded that this statute would prohibit plaintiff from raising any defenses against the RTC arising out of the exclusions in the policy. Because of the ruling, plaintiff was liable to the RTC under the policy, and plaintiff therefore cancelled the Deer deed of trust.
The statute at issue provides in pertinent part:
(1) In general. No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11 [12 U.S.C. § 1821], either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement
(A) is in writing,
(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(D) has been, continuously, from the time of its execution, an official record of the depository institution.
12 U.S.C. § 1823(e) (Cum.Supp.1995). While the "Corporation" referred to in the statute is the Federal Deposit Insurance Corporation, *806 the statute is expressly made applicable to the RTC under 12 U.S.C. § 1441a(b)(4)(A) (Cum.Supp.1995).
Section 1823(e) was enacted in 1950 as a codification, although more encompassing and more precise, see FDIC v. O'Neil, 809 F.2d 350, 353 (7th Cir.1987), of the rule announced in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The purpose served by the common law D'Oench, Duhme doctrine and section 1823(e) is the same, and the case law interpreting the two are generally considered in tandem. Outer Banks Contractors, Inc. v. Daniels & Daniels Constr., Inc., 111 N.C.App. 725, 731, 433 S.E.2d 759, 763 (1993). Therefore, our analysis consists of cases interpreting both the D'Oench, Duhme case and section 1823(e).
The rule which has developed has been stated as follows:
In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.
Outer Banks, 111 N.C.App. at 732, 433 S.E.2d at 763 (quoting Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1515 (11th Cir.1991), cert. denied, 504 U.S. 908, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992)). The purpose of this rule is to ensure that federal banking regulators are able to rely on a failed financial institution's written records and its assets. Id.; see also North Arkansas Medical Ctr. v. Barrett, 962 F.2d 780, 788-89 (8th Cir.1992) (stating the policy as being "to facilitate regulation and protect the FDIC from financial loss by assuring that the bank's financial condition can be assessed instantaneously; to assure that senior bank officials are aware of unusual transactions before the bank agrees to them; and to prevent collusion between bank employees and customers on the eve of a bank's failure").
We agree with plaintiff's contention that the title insurance policy in this case constitutes an "asset" under section 1823(e). See National Credit Union Admin. v. Ticor Title Ins. Co., 873 F.Supp. 718, 725 (D.Mass.1995). Thus, the issue is whether there was an "agreement" which would tend to defeat the RTC's interest in the policy. Defendants alleged in their answer that First Federal had agreed not to pay off the Deer and Wachovia deeds of trust and to leave those liens on the property, and that exclusion 3(a) in the title insurance policy thus prevented First Federal from recovering under the policy. That provision provides that the following matters are expressly excluded from coverage: "3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant." We believe that any such agreement by First Federal would tend to diminish or defeat the RTC's interest in the policy and that, therefore, the agreement must comply with the four requirements of section 1823(e).
Defendants argue, however, that the D'Oench, Duhme doctrine has been held not to apply to a defense in a case in which the document sought to be enforced is one which contains on its face bilateral obligations which serve as the basis for the defense. Defendants state that the driving principle in such cases is that none of the policies that favor the invocation of the doctrine are present where the terms of the agreement that tend to diminish the rights of the federal agency appear in writing on the face of the agreement that the federal agency seeks to enforce.
Defendants cite one of the leading cases on this point, Howell v. Continental Credit Corp., 655 F.2d 743 (7th Cir.1981). In that case, the FDIC's predecessor in interest had entered into a lease with Howell. The provision of the lease at issue required the FDIC's predecessor, the lessor, to take certain actions. Howell claimed that such actions were not taken and that the lease was not binding on her. The FDIC claimed that the lease was enforceable and that D'Oench, Duhme applied, thereby estopping Howell from claiming that her obligations under the lease *807 were contingent upon the FDIC's predecessor's taking the actions required of it under the lease. The Seventh Circuit held that D'Oench, Duhme did not apply, as Howell's defense arose directly and explicitly from the provisions of the lease, which was in the bank's files and which the FDIC was seeking to enforce. Id. at 747. The court stated that this was not a case such as D'Oench, Duhme and its progeny, where the promissor's defense depended solely upon a secret or unrecorded agreement, usually oral, of which the FDIC could have had no notice. Id. The court further stated that none of the policies that favor the invocation of the doctrine were present in a case such as the one before it. Id.
In a later case, however, the Seventh Circuit stated that while some of the broad and general language in its opinion in Howell may be helpful to one of the parties presently before the court, "Lesson Number One in the study of law is that general language in an opinion must not be ripped from its context to make a rule far broader than the factual circumstances which called forth the language." FDIC v. O'Neil, 809 F.2d 350, 354 (7th Cir.1987). The court recalled the following general statement it had made in Howell: "[Section 1823(e) ] is inapplicable `where the document the FDIC seeks to enforce is one, such as the leases here, which facially manifests bilateral obligations and serves as the basis of the lessee's defense.'" Id. (quoting Howell, 655 F.2d at 746).
In the present case, too, defendants rely on this statement from Howell. However, as did the Seventh Circuit in O'Neil, we find Howell distinguishable even though some of its broad language is helpful to defendants. As the court noted in O'Neil, not only was the lease in Howell explicit about the lessor's obligation, there was no side agreement at all. Id. Because there was no side agreement to which the policy behind the D'Oench, Duhme doctrine would apply, the court in Howell properly held that the doctrine did not apply. In the case at hand, however, the mere fact that the insurance policy contains the exclusion provision on its face is not dispositive. It is the fact that First Federal allegedly agreed, in a side agreement, that it would leave the superior liens on the property that necessitates the application of section 1823(e). Such an agreement, unless it complied with the requirements of the statute, would not be discoverable by the RTC upon an examination of First Federal's records. Thus, the RTC would have no indication that the exclusion in the insurance policy applied. Because the purpose behind D'Oench, Duhme and section 1823(e) is served by applying the doctrine in this case, we believe the "Howell exception" is inapplicable here. Accordingly, we hold that the trial court correctly concluded that section 1823(e) applied in this case. For a case holding contra, see National Credit Union Administration v. Ticor Title Insurance Co., 873 F.Supp. 718 (D.Mass.1995) (holding that "Howell exception" applies to exclusion in title insurance policy).
Plaintiff's evidence showed that the RTC had located no agreement (i.e., the alleged agreement to leave the senior liens in place) in First Federal's records which would satisfy the four requirements of section 1823(e). Defendants put on no witnesses, and they produced no evidence to show that there existed such an agreement. Defendants did elicit testimony on cross-examination which tended to show that the RTC had not produced all documents which related to the loan transaction. However, defendants did not show that there existed an agreement to leave the senior liens in place which complied with the requirements of section 1823(e). We conclude that the trial court correctly ruled that, based on the absence of evidence of such an agreement, the exclusions in the policy could not be used against the RTC.
For the reasons stated, the judgment is reversed as to the award of damages and the case is remanded for a new trial on the issue of damages alone. In light of our holding, we will not address defendants' remaining argument concerning damages, as the alleged error may not recur at retrial.
Affirmed in part, reversed in part, and remanded for new trial on damages.
GREENE, J., dissents.
MARK D. MARTIN, J., concurs with separate opinion.
*808 MARK D. MARTIN, Judge, concurring with separate opinion.
The majority opinion presents the question of whether there is sufficient evidence to support the jury's liability determination where the plaintiff sustained actual damages prior to the return of the verdict. A brief review of our jurisprudence is necessary for proper resolution of this question.
Section 1-15 of our General Statutes provides in pertinent part:
Except where otherwise provided by statute, a cause of action for malpractice ... shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: ... Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action....

N.C.Gen.Stat. § 1-15(c) (1983) (emphasis added).
According to the language of section 1-15, a professional malpractice cause of action ordinarily accrues "at the time of the occurrence of the last act of the defendant giving rise to the cause of action." Because the statute links accrual to the "last act of the defendant" which gives rise to the "cause of action," section 1-15 is ambiguous as to whether the limitations period accrues from the date of the last act of negligence by the defendant or, alternatively, from the date plaintiff incurs actual damages.
Our courts have resolved this ambiguity in favor of accrual of a malpractice cause of action from the date of the last act of negligence by the defendant. In Southeastern Hospital Supply Corp. v. Clifton & Singer, 110 N.C.App. 652, 430 S.E.2d 470 (1993), aff'd 335 N.C. 764, 440 S.E.2d 275 (1994), this Court concluded that "[a] cause of action for legal malpractice accrues at the time of the occurrence of the last wrongful act of the defendant and an action must be commenced within three years of that accrual." Id. at 653-654, 430 S.E.2d at 471 (emphasis added). Likewise, in Nationwide Mutual Ins. Co. v. Winslow, 95 N.C.App. 413, 416, 382 S.E.2d 872, 874 (1989), notwithstanding plaintiff's argument that actual damages were not incurred until the default judgment became final on 3 July 1985, plaintiff's cause of action for legal malpractice was held to accrue from the date the defendant allegedly failed to file an answer, 8 March 1983.[1]
The operation of the statute of repose in section 1-15 was recently interpreted in Hargett v. Holland, 337 N.C. 651, 447 S.E.2d 784, petition for reh'g denied, 338 N.C. 672, 453 S.E.2d 177 (1994). In Hargett plaintiffs alleged in their complaint that defendant prepared a will for the testator on or before "September 1, 1978" which "fail[ed] to use the appropriate verbiage so as to effectuate the intent of the testator." Id. 337 N.C. at 653, 447 S.E.2d at 787. After the death of the testator, plaintiff filed suit on 6 November 1991 and sought damages to the extent they did not receive all of the remainder interest in the family farm. Id. at 654, 447 S.E.2d at 787.
The Supreme Court concluded the "defendant's last act giving rise to the claim occurred when he supervised the execution of the will on 1 September 1978; therefore plaintiffs' claim, being brought more than four years after that date, is barred by the four-year statute of repose provision contained in the professional malpractice statute of limitations." Id. In support of its holding, the Court stated:
Regardless of when plaintiffs' claim might have accrued, or when plaintiffs might have discovered their injury, because of the four-year statute of repose, their claim is not maintainable unless it was brought within four years of the last act of defendant giving rise to the claim.
Id. at 655, 447 S.E.2d at 788.
In the present case the defendant attorney executed and submitted to plaintiff the "Attorney's *809 Preliminary Report on Title," dated 11 August 1988, in which the Deer and Wachovia deeds of trust were identified as liens on the subject property. In September 1988 the defendant attorney executed and delivered to plaintiff the "Attorney's Final Certificate for Owners and/or Loan Policy," in which the defendant attorney expressly represented to the plaintiff in writing, among other things, that the Deer and Wachovia deeds of trust had been cancelled of record or released and that First Federal of Raleigh had a first lien position on the subject property. Plaintiff filed suit on 19 August 1991, within three years from the date of the attorney's completion of the final title opinion.
The lesson of our jurisprudence under section 1-15 is perfectly clear: If plaintiffs await the occurrence of actual damages within the context of legal malpractice, their right to sue for redress of the harm may be barred by section 1-15's three-year statute of limitations or, alternatively, the four-year statute of repose. Because our courts have held that a malpractice cause of action accrues from the date of the defendant's negligence, section 1-15 provides little comfort in cases where, as here, the consequences of the negligence do not manifest until years after the last act of the defendant. This dilemma has been recognized by Mallen and Smith in their leading treatise on Legal Malpractice:
Particularly in legal malpractice contexts... [the negligent act] may not be discoverable by the client or even the lawyer, and the injury may not be foreseeable or occur for years.
2 Ronald E. Mallen and Jeffrey M. Smith, Legal Malpractice, § 18.10 (3d ed. 1989) (hereinafter "Legal Malpractice").
Having its roots in ordinary negligence claims, the "occurrence" rule governing the accrual of malpractice causes of action, as applied in North Carolina, had its genesis in the United States Supreme Court opinion of Wilcox v. Plummer's Executors, 29 U.S. (4 Pet.) 172, 7 L.Ed. 821 (1830). Rejecting the argument the statute of limitations did not accrue until the client suffered actual damages due to the attorney's negligence, the Court stated:
When the attorney was chargeable with negligence or unskillfulness his contract was violated, and the action might have been sustained immediately. Perhaps, in that event, no more than nominal damages may be proved and no more recovered; but, on the other hand, it is perfectly clear that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict.

29 U.S. (4 Pet.) at 182, 7 L.Ed. at 824 (emphasis added).
The occurrence rule has been superseded in most jurisdictions by one or more alternate theories governing the accrual of the limitations period in legal malpractice claims including, among other possibilities, the damage rule and the discovery rule. See LEGAL Malpractice, supra, §§ 18.10-18.11, 18.14.[2] In a legal malpractice cause of action the aggrieved party ordinarily does not incur actual damages at or near the date of the defendant's negligent act or omission. Therefore, the occurrence rule inescapably relies upon the concept of nominal damages to support institution of suit prior to accrual of the limitations period:
The concept of nominal damages ... serve[s] a necessary function in those jurisdictions which purport to follow the rule that a statute of limitations commences to run when the negligence occurs. Where suit must be brought based upon the time *810 of the wrongful act or omission, and usually before any actual damages occur, nominal damages are indispensable to a cause of action.

1 LEGAL MALPRACTICE, supra, § 16.2, at 893 (emphasis added).
In the present case it can be reasonably inferred that plaintiff filed suit within three years from the completion of the final title opinion to avoid the bar of the three-year statute of limitations in section 1-15. One year later, when the four-year statute of repose would have run, plaintiff still had not incurred actual damages. Had plaintiff waited to file its suit until the occurrence of actual damages, suit would have been barred under the four-year statute of repose. Hargett v. Holland, supra.
Examination of our jurisprudence under section 1-15 reveals the wisdom of plaintiff's election to file suit within three years of the last negligent act of the defendant. Indeed, assuming actual damages do not occur coincidental to the actual breach of duty by the defendant attorney, it is nonetheless clear suit must be instituted within the four-year statute of repose regardless of whether the plaintiff has incurred actual damages. See Hargett v. Holland, supra.
The dissent acknowledges that the occurrence rule, as applied in North Carolina, leads to "injustices and frequently illogical results." The dissent correctly notes that Mallen and Smith indicate the occurrence rule may "promote unnecessary, expensive, and lengthy litigation;" however, the treatise nonetheless concludes, in occurrence rule jurisdictions such as North Carolina, Southeastern Hospital Supply Corp. v. Clifton & Singer, supra, Nationwide Mutual Ins. Co. v. Winslow, supra, that nominal damages remain indispensable to a cause of action. 1 Legal Malpractice, supra, § 16.2, at 893.
In any event, I believe the occurrence of actual damages during the jury deliberations, thereby occurring before the return of the verdict, Wilcox v. Plummer's Executors, supra, is sufficient to uphold the jury verdict below on the question of liability. The reasoning of the decision of the United States Supreme Court in Wilcox was essentially followed by our Supreme Court in Jewell v. Price, 264 N.C. 459, 461-62, 142 S.E.2d 1, 3 (1965) (proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict).
I do not quarrel with, but wholly endorse, the concept that claims should be barred after the proper accrual of the appropriate limitations period. Nonetheless, our jurisprudence dictates that the statute of limitations in a professional malpractice action accrues from the date of the defendant's negligent act. Accordingly, the aggrieved party should be afforded the opportunity to seek redress for allegations of professional malpractice before the occurrence of actual damages, seeking nominal damages for the technical breach of duty in the hope actual damages accrue before the return of the verdict, Jewell v. Price, supra, or, alternatively, our jurisprudence should be revised to allow the appropriate limitations period to be tolled until the occurrence of actual damages.[3]
Accordingly, I concur in the majority opinion and believe on remand plaintiff should be afforded the opportunity to prove the amount of its alleged actual damages.
GREENE, Judge, dissenting.
I do not agree that the plaintiff was entitled to nominal damages in this negligence action.
"[O]nce a cause of action is established, plaintiff is entitled to recover, as a matter of law, nominal damages...." Hawkins v. Hawkins, 331 N.C. 743, 745, 417 S.E.2d 447, 449 (1992). The question in this case is whether the plaintiff, at the close of the *811 evidence, established the cause of action on which its complaint was based. The answer depends on whether actual loss is an essential element of a cause of action for negligent breach of duty by an attorney to a title insurance company.
Negligence actions are in that category of cases where "the plaintiff has no cause of action at all unless and until damages can be shown." 1 Dan B. Dobbs, Law of Remedies § 3.3(2) (2d ed.1993) (hereinafter Dobbs ); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 30, at 164-65 (5th ed.1984) (hereinafter Prosser) (actual loss or damage is element of cause of action based on negligence); The Asheville School v. Ward Constr., Inc., 78 N.C.App. 594, 598, 337 S.E.2d 659, 662 (1985) (injury and damage listed as elements of cause of action based on negligence), disc. rev. denied, 316 N.C. 385, 342 S.E.2d 890 (1986). In other words, a cause of action based on negligence is established only if "a legally recognized loss is demonstrated." Dobbs § 3.3(2). Thus "[n]ominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred." Prosser § 30, at 165. To hold otherwise, especially in the context of legal malpractice, would "promote unnecessary, expensive and lengthy litigation." 1 Ronald E. Mallen and Jeffery M. Smith, Legal Malpractice § 16.2 (3d ed.1989) (hereinafter Mallen ). "The cost of a lawsuit to establish a principle is often an unwarranted expense to impose upon adverse parties, the courts and society." Id.
Our North Carolina courts have, on several occasions, made the general statement that "[n]ominal damages may be recovered in actions based on negligence." E.g., Jewell v. Price, 264 N.C. 459, 461, 142 S.E.2d 1, 3 (1965); The Asheville School, 78 N.C.App. at 599, 337 S.E.2d at 662. These cases do not hold, however, that nominal damages are recoverable in a negligence action in the absence of proof of some actual loss. In each case the facts reveal that the plaintiff had in fact sustained some actual loss. In any event, actual loss or harm is without question an essential element of an action by a third person against a professional person who is alleged to have been negligent in the performance of his contract with his client. 2 Dobbs § 6.11 (cause of action based on lawyer malpractice requires proof of actual damages); see United Leasing Corp. v. Miller, 45 N.C.App. 400, 406, 263 S.E.2d 313, 318, disc. rev. denied, 300 N.C. 374, 267 S.E.2d 685 (1980); see also Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 209, 214, 367 S.E.2d 609, 614, 617 (1988).
In this case, the plaintiff claims that Debnam, an attorney, was negligent in certifying the title and that as a proximate cause it "has suffered a loss." Thus, plaintiff is entitled to nominal damages only upon proof of an actual loss and in the absence of such proof a directed verdict for the defendant should have been entered. The evidence, in the light most favorable to the plaintiff and viewed at the close of all the evidence, is that plaintiff had not suffered a loss. Indeed, the majority acknowledges that the "plaintiff suffered no damages" until the Deer deed of trust was cancelled, which did not occur until the jury was in deliberation. At the time the evidence was closed, plaintiff had not paid any monies to its insured nor had it removed the lien which was in violation of the policy of insurance. There is evidence that it did pay monies to purchase the notes and deeds of trust that were superior to First Federal's lien. In exchange, however, for the purchase of these notes and deeds of trust it received an assignment of the Deer note and deed of trust which remained a valid lien on the property for the full amount of both the Deer lien and the Wachovia lien. There is no evidence that the Deer note and deed of trust had value less than that paid by the plaintiff. Indeed, the plaintiff makes no argument to the contrary in its brief to this Court. Thus, because there is no evidence in this record that plaintiff sustained any loss, the evidence was insufficient to support a verdict for the plaintiff, even for nominal damages, and directed verdict for the defendant should have been granted on this basis.
The fact that at some point after the close of the evidence the plaintiff did cancel the Deer deed of trust cannot affect the ruling on this motion for directed verdict, which must be judged on the basis of the evidence submitted to the trial court before the close of *812 the evidence. See Citrini v. Goodwin, 68 N.C.App. 391, 399, 315 S.E.2d 354, 360 (1984). Furthermore, any obligation, which may have matured after the close of the evidence, that the plaintiff had to cancel the deed of trust is likewise immaterial.
Accordingly, I would reverse the trial court's denial of defendants' directed verdict motion and remand for dismissal of the plaintiff's claim.[1]
NOTES
[1] The dissent relies upon Snipes v. Jackson, 69 N.C.App. 64, 316 S.E.2d 657, review denied and appeal dismissed by, 312 N.C. 85, 321 S.E.2d 899 (1984), for the proposition that a malpractice cause of action in tax matters does not accrue until actual injury. However, in Nationwide Mutual Ins. Co. v. Winslow, 95 N.C.App. 413, 382 S.E.2d 872 (1989), this Court held Snipes was not controlling in the context of "professional negligence suits against doctors or attorneys in general." Id. at 416, 382 S.E.2d at 874.
[2] Section 1-15 provides for a partial discovery rule:

[W]henever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made....
Because the statute of repose within section 1-15 prohibits institution of suit "more than four years from the last act of the defendant," Hargett v. Holland, supra, plaintiff's suit would have been barred had it awaited the occurrence of actual damages despite the existence of the partial discovery rule in section 1-15.
[3] Several jurisdictions have adopted the "damage" rule of accrual within the context of malpractice litigation. See, e.g., Banton v. Marks, 623 S.W.2d 113 (Tenn.App.1981); Haghayegh v. Clark, 520 So.2d 58 (Fla.App.1988); Cofield v. Smith, 495 So.2d 61 (Ala.1986); Zidell v. Bird, 692 S.W.2d 550 (Tex.Ct.App.1985); Cantu v. St. Paul Companies, 401 Mass. 53, 514 N.E.2d 666 (1987). "An initial and still common application of the damage rule is an error in preparation of a will, since the injury cannot occur until after the death of the attorney's client." Legal Malpractice, supra, § 18.11, at 100. In Hargett v. Holland, supra, our Supreme Court declined to adopt the "damage" rule and instead applied the four-year statute of repose in section 1-15.
[1] Whether plaintiff's cause of action accrued at the time of the negligent act or at the time the plaintiff sustained actual injury, an issue discussed in the concurring opinion, is not an issue in this case. I do note, however, that "injustices and frequently illogical results from application of the occurrence rule have prompted most courts to add the requirement that there be actual injury before a cause of action accrues for purposes of a statute of limitations." 2 Mallen § 18.11 (3d ed. Supp.1989); see Snipes v. Jackson, 69 N.C.App. 64, 316 S.E.2d 657 (holding that malpractice action in tax matters did not accrue until actual injury), disc. rev. denied and appeal dismissed, 312 N.C. 85, 321 S.E.2d 899 (1984). In this case there is no dispute that plaintiff's claim was filed within the relevant statute of limitations. Furthermore, any argument that the plaintiff was forced to file its claim prior to the occurrence of any actual injury in order to avoid the running of the statute of limitation or repose, and therefore it should be insulated from the actual injury requirement, cannot be sustained. The occurrence of actual injury in this case, the cancellation of the Deer deed of trust, was totally within the control of the plaintiff.